UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DR. KHUSHI L. MATTA,                                    :

               Plaintiff,                     :        11 Civ. 599 (BSJ) (GWG)

     -v.-                                                :        OPINION AND ORDER

ROSWELL PARK CANCER INSTITUTE        :
CORPORATION, et al.,
                                         :
              Defendants.                     :
                                         :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Khushi L. Matta has brought suit against the Roswell Park Cancer Institute

Corporation ("Roswell"), Health Research Inc. ("HRI"), Photolitec LLC ("Photolitec"), Dr.

Ravindra K. Pandey, and Dr. Thomas J. Dougherty (collectively, "the defendants") pursuant to

35 U.S.C. §§ 115, 116 and state law.  The defendants have filed a motion pursuant to 28 U.S.C.

§ 1406(a), or in the alternative, 28 U.S.C. § 1404(a), seeking to transfer the action to the United

States District Court for the Western District of New York.  For the following reasons,

defendants' motion is granted.

I.      BACKGROUND

      A.     Procedural History

      Plaintiff filed the original complaint on January 28, 2011, naming Roswell, HRI, and Drs.

Pandey and Dougherty as defendants.  See Complaint, filed Jan. 28, 2011 (Docket # 1).  On June

3, 2011, defendants filed the instant motion seeking a transfer of the action from this Court (the

"Southern District") to the United States District Court for the Western District of New York

(the "Western District").[1]  Shortly thereafter, plaintiff filed an amended complaint naming

Photolitec as an additional defendant and raising a new state law claim.  See Amended

Complaint, filed June 13, 2011 (Docket # 19) ("Am. Compl.").[2]  We will refer to this document

as "the complaint."

        B.        Facts Relevant to Venue

                1.        Allegations in the Amended Complaint

The complaint alleges that plaintiff is the co-creator and inventor of certain carbohydrate

compounds used to treat cancer.  See Am. Compl. ¶¶ 13-22.  The defendants are alleged to have

failed to designate plaintiff as the co-inventor of these compounds on applications to the U.S.

---

[1]  See Notice of Motion, filed June 3, 2011 (Docket # 5); Defendants' Memorandum of Law in Support of Their Motion to Transfer This Action to the Western District of New York Pursuant to 28 U.S.C. § 1406(a) or, alternatively, 28 U.S.C. § 1404(a), filed June 3, 2011 (Docket # 6); Affidavit of William J. Brennan, Esq., filed June 3, 2011 (Docket # 7); Affidavit of Ravindra K. Pandey, PhD., filed June 3, 2011 (Docket # 8) ("Pandey Aff."); Affidavit of Michael B. Sexton, Esq., filed June 3, 2011 (Docket # 9) ("Sexton Aff."); Affidavit of Thomas J. Dougherty, PhD., filed June 3, 2011 (Docket # 10) ("Dougherty Aff."); Affidavit of Michael J. Nazarko, filed June 3, 2011 (Docket # 11) ("Nazarko Aff.").  On June 17, 2011, plaintiff filed his original opposition papers.  See Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Transfer, filed June 17, 2011 (Docket # 20); Declaration of Henry J. Cittone, Esq., filed June 17, 2011 (Docket # 21) ("Cittone Decl.").  Subsequently, an amended version of plaintiff's opposition memorandum was filed because the original contained various errors.  See Plaintiff's Amended Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Transfer, filed June 18, 2011 (Docket # 22) ("Pl. Memo").  The Court will only consider plaintiff's amended opposition memorandum.  The defendants filed their reply on June 24, 2011.  See Reply Memorandum of Law in Support of the Motion of Defendants Roswell Park Cancer Institute Corporation, Health Research, Inc., Dr. Ravinda [sic] K. Pandey, and Dr. Thomas J. Dougherty to Transfer this Action to the Western District of New York Pursuant to 28 U.S.C. § 1406(a) or, alternatively, 28 U.S.C. § 1404(a), filed June 24, 2011 (Docket # 25) ("Reply"); Reply Affidavit of William J. Brennan, Esq., filed June 24, 2011 (Docket # 23); Reply Affidavit of Ravinda [sic] K. Pandey, filed June 24, 2011 (Docket # 24) ("Pandey Reply Aff.").

[2]  While Photolitec has not yet responded to the amended complaint, an attorney filed a notice of appearance on behalf of Photolitec on June 27, 2011.  See Notice of Appearance, filed June 27, 2011 (Docket # 26).

Patent and Trademark Office, see id. ¶¶ 24-25, 30, despite the fact that they were aware of Dr.

Matta's contributions, see id. ¶¶ 15-19, 29, 37.

The complaint asserts the following claims: (1) correction of inventorship under 35

U.S.C. §§ 115, 116; (2) tortious interference with prospective business relations; (3) unjust

enrichment; (4) breach of contract; (5) tortious interference with business relations; and (6)

misappropriation of idea.  Am. Compl. ¶¶ 38-96.

2.    The Parties

Dr. Matta "is a PhD[] chemist whose research since 1971 has focused on the field of

carbohydrate chemistry . . . ."  Id. ¶ 14.  Currently, Dr. Matta resides in Williamsville, New York

– a suburb of Buffalo, New York, see id. ¶ 1, and is employed as "a professor emeritus at

Roswell in the Cancer Biology Department," Pl. Memo at 1; see Cittone Decl. ¶ 2.

Williamsville, New York is located in the Western District.  Roswell is located in Buffalo, Am.

Compl. ¶ 2, also in the Western District.

Dr. Pandey is the "Director of Pharmaceutical Chemistry at [Roswell], and a Professor

with the Institute of Lasers, Photonics, and Biophotonics at the State University of New York at

Buffalo.  Pandey Aff. ¶ 1.  In addition, Dr. Pandey serves as the Chief Scientific Officer of

Photolitec.  Pandey Reply Aff. ¶ 1.  Dr. Pandey resides in Williamsville, New York.  Id. ¶ 2.  Dr.

Dougherty is "the Chief Emeritus Professor of Oncology at [Roswell], and a Research Professor

of Radiation Oncology at the School of Medicine and Biomedical Sciences at the State

University of New York at Buffalo."  Dougherty Aff. ¶ 1.  Dr. Dougherty resides in "Grand

Island, New York, a suburb of Buffalo."  Id. ¶ 2.  Grand Island, New York is located in the

Western District.   Neither Dr. Pandey nor Dr. Dougherty (1) have bank accounts; (2) own real

property; (3) employ any individuals; (4) have telephone numbers; (5) have post office boxes; or

(6) maintain offices in the Southern District.  See Pandey Aff. ¶¶ 4-9; Dougherty Aff. ¶¶ 4-9.

Nor have they "designated an[] agent to receive process on [their] behalf in the Southern

District."  Pandey Aff. ¶ 10; Dougherty Aff. ¶ 10

Roswell "is a public hospital and medical research center in Buffalo owned and operated

by the state of New York and its department of health."  N.Y. Pub. Auth. Law § 3551.  Roswell

is "the oldest cancer research and treatment facility in the country."  Id.  The institute's mission

"from its inception has focused on research and the translation of research findings to the clinical

setting."  Id.  Roswell is a "public corporation" organized under the laws of New York, see N.Y.

Pub. Auth. Law § 3553(1)(a), with its principal place of business in Buffalo, New York, see Am.

Compl. ¶ 2.  Roswell operates the New York state HIV/AIDS hotline which "provides referrals

to free HIV testing centers, support groups, case management, housing and other HIV-related

services for the State of New York (including New York City)."  Roswell Park Center Research

Institute Scientific Report 2009 (annexed as Ex. A to Cittone Decl.) at 5.  In addition, Roswell

receives funding from various entities that are located within the Southern District, including the

Breast Cancer Research Foundation, Avon, and various New York State programs.  See id. at Pl.

Memo at 3; Reply at 4 (Defendants do not contest this fact).

"HRI is a not-for-profit corporation organized under the laws of the State of New York,

with its principal place of business located in Menands, New York (a suburb of Albany)."

Nazarko Aff. ¶ 2.  In addition, HRI has an additional "center[]of operations" on Roswell's

campus in Buffalo.  Id. ¶ 4.  Menands, New York is in the Northern District of New York.  The

Nazarko Affidavit provides the following information with respect to HRI's functions and

affiliations:

HRI is affiliated with the New York State Department of Health ("DOH"), and

4

HRI's function is to assist, <u>inter alia</u>, [Roswell] and the DOH in evaluating and administering financial support services for research projects, including technology transfer.  In this connection, HRI evaluates, solicits, and administers financial support for DOH and [Roswell] research projects.  HRI has administered more than $7 billion in funding to supplement those projects.

<u>Id.</u> ¶ 2.  All of HRI's income "flows to" and "all grant applications are filed by" HRI's offices in Menands and Buffalo, New York.  <u>Id.</u> ¶¶ 12-13.  "All [of] HRI's technology transfer functions are conducted in its [Menands] or Buffalo office."  <u>Id.</u> ¶ 14.

HRI has the following connections to the Southern District: (1) 2.6% of HRI's corporate administration employees are located in the Southern District and "work in offices provided by other entities such as the Helen Hayes Hospital in West Haverstraw, New York or DOH leased space," <u>id.</u> ¶ 11; (2) HRI solicits donations from the Southern District, <u>see</u> Excerpt from HRI Website (annexed as Ex. E to Cittone Decl.), and supports events in New York City central to its health care mission, <u>see</u> Excerpt from HRI Website (annexed as Ex. B to Cittone Decl.); and (3) HRI "serves major DOH programs" located within the Southern District, including the Helen Hayes Hospital, Excerpt from HRI Website (annexed as Ex. F to Cittone Decl.).

Photolitec "is a domestic limited liability company . . . organized under the laws of the State of New York on July 30, 2007, and . . . formed to develop chemical compounds used to identify (and then treat) certain cancers through medical imaging."  Pandey Reply Aff. ¶ 2.  "[P]hotolitec's equity holders include [Roswell], the State University of New York at Buffalo, and the University of Michigan."  <u>Id.</u>  Photolitec's sole office is in Clarence, New York, a suburb of Buffalo, New York.  <u>Id.</u> ¶ 3.  Clarence, New York is in the Western District.

Roswell, HRI, and Photolitec do not maintain offices in the Southern District.  Sexton Aff. ¶ 9; Nazarko Aff. ¶ 9; Pandey Reply Aff. ¶ 10.  Nor do they own real estate, or maintain bank accounts, telephone numbers, or post office boxes in the Southern District.  Sexton Aff.

¶¶ 4-5, 7-8; Nazarko Aff. ¶¶ 5-8; Pandey Reply Aff. ¶¶ 5-6, 8-9.  Nor has any entity designated

an agent to receive process on their behalf in the Southern District.  Sexton Aff. ¶ 10; Nazarko

Aff. ¶ 10; Pandey Reply Aff. ¶ 11.  In addition, Roswell and Photolitec do not employ any

individuals in the Southern District.  Sexton Aff. ¶ 6; Pandey Reply Aff. ¶ 7.

II.      DISCUSSION

  A. Law Governing Motions to Transfer to Another Judicial District

  28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  28 U.S.C. § 1404(a).  The decision whether to transfer a

case from one judicial district to another is a two-part inquiry.  In re Nematron Corp. Secs.

Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998).  First, the court must determine whether the

case sought to be transferred could have been brought in the proposed transferee court.  Id.

Second, the court must decide whether transfer is warranted for the convenience of parties and

witnesses, and in the interest of justice.  Id. (internal quotations omitted) (quoting Wilshire

Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)).  Here, it

is undisputed that this action could have been brought in the Western District.  Therefore, only

the second part of the inquiry is at issue.

  The Second Circuit has held that "courts should give deference to a plaintiff's choice of

forum."  Iragorri v. United Techs. Corp., 274 F.3d 65, 70 (2d Cir. 2001).  Nonetheless, "if the

balance of conveniences suggests that trial in the chosen forum would be unnecessarily

burdensome for the defendant or the court, dismissal is proper."  Id. at 71 (citations omitted).

Whether transfer should occur is "determined upon notions of convenience and fairness on a

case-by-case basis."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing

Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)); accord Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998).  The moving party must make a "clear and convincing" showing that the balance of convenience favors transfer.  N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010).  The Second Circuit has noted that among the factors to be considered in determining whether to grant a motion to transfer venue are the following:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

Id. at 112 (citations omitted).  Courts have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice . . . ."  Fellus v. Sterne, Agee & Leach, Inc., 2011 WL 1218838, at *2 (S.D.N.Y. Mar. 29, 2011); accord AIG Fin. Products Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty, Wash., 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009).

"There is no rigid formula for balancing these factors and no single one of them is determinative.  Instead, weighing the balance is essentially an equitable task left to the Court's discretion."  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted).  While the list of factors is not exhaustive, see Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 575, 576 (S.D.N.Y. 2001), no party has suggested that any other factor should be considered.

### B.      Application of the Section 1404(a) Factors

#### 1.      Convenience of the Parties and Non-Party Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute."  Nematron, 30 F. Supp. 2d at 400 (quoting Cento Grp. S.p.A. v. OroAmerica

Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)) (bracketing added and internal quotation marks omitted); accord AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 2011 WL 1325996, at \*5 (S.D.N.Y. Mar. 28, 2011); Seltzer v. Omni Hotels, 2010 WL 3910597, at \*2 (S.D.N.Y. Sept. 30, 2010); Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991).  We first address the convenience of the parties, and then the convenience of non-party witnesses.

### a.    Convenience of Parties

The convenience of the parties weighs heavily in favor of transfer in this case.  All parties, with the exception of HRI, reside in the Western District.  Moreover, a transfer would not result in a shifting of the inconvenience to plaintiff personally because he himself resides in the Western District.  See AIG Fin. Prods. Corp., 675 F. Supp. 2d at 370.  Accordingly, this factor strongly weighs in favor of transfer.  See Ill. Union Ins. Co. v. NRG Energy, Inc., 2010 WL 5187749, at \*2 (S.D.N.Y. Dec. 6, 2010) (court finds factor weighs in favor of transfer where all parties had connection to transferee court).

### b.    Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer."  Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004); accord AGCS Marine Ins. Co., 2011 WL 1325996, at \*5; Seltzer, 2010 WL 3910597, at \*2; Clay Paky v. Vari-lite, Inc., 2000 WL 977709, at \*7 (S.D.N.Y. July 14, 2000).  "In evaluating this factor, the court should 'look beyond the quantity of witnesses and assess the quality of the testimony to be offered.'"  DealTime.com v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (quoting Am. Alliance Ins. Co. v. Sunbeam Corp., 1999 WL 38183, at \*6 (S.D.N.Y. Jan. 28, 1999)); accord Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co., 2009 WL 412126, at \*15 (E.D.N.Y. Feb. 17, 2009) (citations omitted).  Accordingly, the

movant "must clearly specify the key witnesses to be called and must make a general statement

of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d

Cir. 1978), cert. denied, 440 U.S. 909 (1979); accord Leroy Corp. v. Hallberg, 2010 WL

3958761, at *6 (S.D.N.Y. Oct. 4, 2010).  This may be satisfied by "a very general indication of

[the witnesses'] role in the transaction at issue, and thus by implication, of their testimony,"

although it is preferable for the moving party to submit "a more elaborate statement of probable

testimony."  Arrow Elecs. Inc. v. Duconmun Inc., 724 F. Supp. 264, 267 n.1 (S.D.N.Y. 1989);

see generally Feliner v. Cameron, 2010 WL 681287, at *3 (W.D.N.Y. Feb. 24, 2010) ("a party

will not be held to the requirement of stating with precision each witness and document")

(citations and internal quotation marks omitted).  Still, "a specific showing is required only when

the movant seeks a transfer solely 'on account of the convenience of witnesses.' . . . [However,

if the movant] seeks a transfer 'on account of' several factors, his failure to specify key

witnesses and their testimony is not fatal."  Connors v. Lexington Ins. Co., 666 F. Supp. 434,

455 (E.D.N.Y. 1987) (emphasis in original) (quoting Factors Etc., Inc., 579 F.2d at 218); see

Beckerman v. Heiman, 2006 WL 1663034, at *5 (S.D.N.Y. June 16, 2006).

        Here, neither party has identified a single potential witness that resides in the Southern

District.  Instead, plaintiff contends that the Court should refrain from transferring the matter

because it has determined that four witnesses, who reside in Canada, California, Maryland, and

Michigan, would find travel to New York City more convenient than travel to Buffalo.  Pl.

Memo at 9.  Other than this conclusory statement, however, plaintiff has not provided the Court

with any explanation or evidence to support his assertion.  Nor is there any reason to believe that

these witnesses will be materially more inconvenienced by having to appear in Buffalo for a trial

than by being required to appear in New York City.  Moreover, some courts have held that "[t]he

convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer." Herbert Ltd. P'ship, 325 F. Supp. 2d at 288 (citations omitted).  Finally, because the operative facts in the complaint occurred in the Western District, it is likely that there are many other witnesses with knowledge of the matters at issue who will be located in the Western District, and who thus would be inconvenienced by having to travel to New York City to testify.

In sum, this factor too weighs strongly in favor of transfer.  See Herbert Ltd. P'ship, 325 F. Supp. 2d at 286 (court orders transfer to district where majority of party and non-party witnesses reside).

2.      Location of Documents and Ease of Access to Sources of Proof

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.  Furthermore, the location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer." Seltzer, 2010 WL 3910597, at *4 (citations and internal quotations omitted); accord K.M. v. Maclaren USA, Inc., 2011 WL 1900137, at *3 (S.D.N.Y. Apr. 7, 2011), adopted by, 2011 WL 1900141 (S.D.N.Y. May 18, 2011).  Here, neither party has indicated that transmitting documents or other physical evidence would be particularly burdensome.  Moreover, inasmuch as the operative facts alleged in the complaint occurred in the Western District, it is likely that the sources of proof are located with that district.  Accordingly, this factor weighs in favor of transfer.  See Seltzer, 2010 WL 3910597, at *4.

3.      Location of the Operative Facts

The location of a case's operative facts is considered a "primary factor in determining a § 1404(a) motion to transfer." Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F.

10

Supp. 2d 523, 525-26 (S.D.N.Y. 2003) (internal quotation marks omitted); accord Myers v. Lennar Corp., 2010 WL 1992200, at *3 (E.D.N.Y. May 17, 2010).  Here, the complaint alleges no operative facts that occurred within the Southern District.  Nor has plaintiff refuted defendants' assertion that the events described in the complaint all occurred within the Western District.  Therefore, this factor weighs strongly in favor of transfer.  See Ill. Union Ins. Co., 2010 WL 5187749, at *2 (court grants motion to transfer where no operative facts in complaint occurred in forum district); Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005) (transferring case to Pennsylvania even where "it is unclear whether Pennsylvania is the locus of operative facts [because] it is clear that New York is not" and holding that "[w]here there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action").

      4.     Availability of Process to Compel Unwilling Witnesses

Here, neither party has presented evidence that any non-party witness would be unavailable or unwilling to testify.  Therefore, there is no reason to believe that one court is better situated than the other to compel the testimony of unwilling witnesses.

      5.     Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); accord Zinky Elecs. LC V. Victoria Amplifier Co., 2009 WL 2151178, at *7-8 (D. Conn. June 24, 2009).  However, this factor will be accorded "little or no significance" absent a showing of disparity of means between plaintiffs and defendants. See Hernandez, 761 F. Supp. at 989; accord Emblaze Ltd. v. Apple, Inc., 2011 WL 724275, at *4 (S.D.N.Y. Feb. 25, 2011).  While plaintiff contends that the Court should take this factor into

account, see Pl. Memo at 10, he has failed to provide the Court with proof of his financial status

or any evidence that tends to show that he will suffer financially if the matter is transferred.

Matta does contend that a transfer to the Western District would result in his having to retain

new counsel.  But there is no indication that current counsel could not appear pro hac vice in the

Western District or that Matta would be unable to pay the incremental costs associated with a

transfer, such as travel expenses for his attorney.  Thus, this factor is not strong when viewed in

comparison with the other factors already discussed.

> 6.      Forum's Familiarity with the Governing Law

Both the transferor and the transferee courts are located within New York and thus are

familiar with New York law.  Accordingly, this factor does not weigh in either party's favor.

> 7.      Plaintiff's Choice of Forum

District courts deciding transfer motions have noted that "[a] plaintiff's choice of forum

is generally entitled to considerable weight and should not be disturbed unless the balance of the

factors is strongly in favor of the defendant.  Where the factors are equally balanced, the plaintiff

is entitled to its choice."  Berman, 30 F. Supp. 2d at 659 (citations omitted); accord In re

Warrick, 70 F.3d 736, 740-41 (2d Cir. 1995) ("[Plaintiff's] choice of venue [is] 'entitled to

substantial consideration.'"); accord WorldCare Ltd. v. World Ins. Co., 767 F. Supp. 2d 341, 363

(D. Conn. 2011).  However, "plaintiffs' choice of forum is accorded less weight where the

plaintiffs' chosen forum is neither their home nor the place where the operative facts of the

action occurred."  Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y.1994); accord

Emp'rs Ins. of Wausau v. News Corp., 2008 WL 4443899, at *3 (S.D.N.Y. Sept. 29, 2008)

("[W]here the plaintiff has chosen a forum that is neither the district of its residence, nor the

locus of the operative facts in the case, this choice is given considerably less weight."); accord

Kwik Goal, Ltd. v. Youth Sports Publ'g Inc., 2006 WL 1517598, at *2 (S.D.N.Y. Mar. 31, 2006)

(plaintiff's choice of forum was entitled to "less deference" where the forum was not plaintiff's

"home state" and "the case lack[ed] material or significant contacts with the forum state"

because "no one involved in th[e] litigation [was] located in the SDNY" and the sales in the

district "were minimal," i.e., less than four percent); ZPC 2000, Inc. v. SCA Grp., Inc., 86 F.

Supp. 2d 274, 280 (S.D.N.Y. 2000) ("when a plaintiff brings a suit . . . in a forum that has no

material connection with the action, this factor should be given little weight") (internal quotation

marks and citations omitted) (alteration in original).

In the instant case, plaintiff does not reside in the Southern District.  Nor is the Southern

District the location where the operative facts occurred.  Accordingly, plaintiff's choice of forum

is accorded little weight.

### 8.    Trial Efficiency and Interest of Justice

Matta argues that a transfer to the Western District would cause unnecessary delay and

waste judicial resources because a "speedier resolution of this case" would occur if defendants

brought their planned motion to dismiss based on sovereign immunity in the Southern District

now.  Pl. Memo at 8-9.  But there is no delay in effectuating a transfer once it has been ordered.

Thus, the defendants' motion, assuming it is made, will be as promptly considered by the

Western District as it would be by the Southern District.[3]

Finally, Matta argues that because Roswell is a "major employer in Buffalo[] and a

prominent cancer treatment hospital . . . it will be more difficult for the Western District to

---

[3]  Plaintiff contends that by filing a motion to transfer defendants have knowingly and intentionally waived "any immunity rights [the defendants] may have had under the 11th Amendment."  Pl. Memo at 11.  The Court does not reach the merits of this argument inasmuch as defendants have yet to raise any immunity arguments in a motion before this Court.

impanel a neutral jury." Pl. Memo at 13. This argument is not only conclusory, it is

unsupported by citation to any case that has considered such an argument as a factor militating

against transfer. If the case goes to trial, the trial court will have ample tools at its disposal to

ensure that an impartial jury is impaneled including, if necessary, transfer to another courthouse

within the district.

> C.      Result of Balancing of the Factors

A balancing of the factors leads to the conclusion that this case should be transferred to

the Western District. With respect to the most important factors, it would be more convenient to

the parties and nonparty witnesses for this case to be litigated in the Western District rather than

the Southern District. Furthermore, the locus of operative facts is in the Western District. None

of the other factors weigh in favor of plaintiff. Therefore, defendants have shown by clear and

convincing evidence that the balance of convenience favors transferring this case to the Western

District.

Because transfer is warranted pursuant to § 1404(a), the Court need not decide whether

transfer is required pursuant to § 1406(a). See Brodsky v. Match.com LLC, 2009 WL 3490277,

at *5 (S.D.N.Y. Oct. 28, 2009) ("[D]istrict courts have discretion to transfer cases under either

28 U.S.C. § 1406(a) or § 1404(a).").

III.    CONCLUSION

For the reasons stated above, the defendants have made a meritorious motion to transfer.

The Court will delay issuing an order to transfer until August 10, 2011, to allow plaintiff to

move for a stay in the event he seeks review of this Opinion and Order pursuant to Fed. R. Civ.

P. 72(a). In the absence of an order granting such a stay, however, the Court will direct the

Clerk, by separate order, to effectuate the transfer on August 10, 2011.

Dated: July 26, 2011
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge